# UNITED STATES DISTRICT COURT

### for the
### Middle District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT "Itz Trenadad" STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC.

)
)
)
)
)
)

Case No. 1:23 MJ 285

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846 | Possession with the intent to distribute and distribution of controlled substances and conspiracy to commit the same (Title 21); Money laundering and engaging in |
| 18 U.S.C. §§ 1956; 1957 | monetary transactions in property derived from specified unlawful activity (Title 18) |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jordan Wicks
*Applicant's signature*

Jordan Wicks, U.S. Postal Inspector
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 7/6/2023

*Judge's signature*

City and state: Winston-Salem, North Carolina

The Honorable Joi E. Peake, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT "Itz Trenadad" STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:23MJ _28 5_ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jordan Wicks, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.    I am a U.S. Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been so employed since 2018. I am currently assigned to the Contraband Interdiction and Investigation Team and am responsible for the investigation of narcotics, drug trafficking organizations, and money laundering. I have received training by the USPIS, and members of the USPIS, in the investigation of controlled substances or proceeds/payments being transported through the United States. From 2014 to 2018, I was employed as a Special Agent

with the United States Army Criminal Investigation Division (CID) as a supervisor in the Special Victims Unit. From 2008 to 2014, I was employed as a Detective with the Maplewood Police Department, in St. Louis County, Missouri. From 2006 to 2008, I was employed as a Narcotics Detective with the Lincoln County Sheriff's Office in Missouri. From 2001 to 2005, I was a member of Security Forces in the United States Air Force. I have experience and advanced training pertaining to drug related investigations from the USPIS, Drug Enforcement Administration ("DEA"), U.S. Army, Midwest Counterdrug Training Academy, Missouri Narcotic Officers Association, the Multijurisdictional Counterdrug Task Force, and various other federal agencies and organizations.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, § 1956 (Laundering of Monetary Instruments); Title 18, United States Code, § 1957 (Engaging in Monetary Transactions in Property Derived from a Specified Unlawful Activity); and Title 21, United States Code, §§ 841(a)(1) and 846 (possession with the intent to distribute controlled substances and conspiracy to do the same), have been committed by Trent Starnes, Nicholas Curry, and other co-conspirators, both known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes; contraband, fruits of these crimes, or other items illegally possessed; and property designed for use, intended for use, or used in committing these crimes, further described in Attachment B.

2

## PROBABLE CAUSE

5.     The United States, including the USPIS, DEA, and Homeland Security Investigations (HSI), are currently investigating the criminal activities of Trent Starnes and Nicholas Curry, and other co-conspirators, both known and unknown.  This investigation has established evidence that Starnes and others are engaged in a conspiracy to distribute methamphetamine, cocaine, and fentanyl in violation of Title 21, United States Code, §§ 841(a)(1) and 846; and laundering of monetary instruments in violation of Title 18, United States Code, §§ 1956 and 1957.  To date, the investigative team has seized approximately 62 kilograms of methamphetamine and 1.5 kilograms of fentanyl, that is directly attributable to this Drug Trafficking Organization ("DTO").

6.     This is an investigation into a DTO primarily distributing methamphetamine, fentanyl, and cocaine.  Trent Starnes is a member of this DTO, who resides in Ramseur, North Carolina, within the Middle District of North Carolina ("MDNC").  Your affiant submits, based on the facts below, that there is probable cause to believe that Facebook Account "Itz Trenadad" is being used by Starnes and contains evidence of drug trafficking, money laundering, and conspiracies to commit these offenses.

7.     In March 2022, the USPIS began to identify suspected drug packages mailed from Phoenix, AZ, to multiple areas within the MDNC pertaining to this investigation.  To date, the USPIS has seized 5 packages mailed to the MDNC that contained an approximate combined total of 27 pounds of methamphetamine.  Although there are multiple addresses known to the USPIS as receiving related packages, two addresses are specific to Trent Starnes for the purpose of this affidavit.  The first address is 4279 Rockie River Street, Ramseur, NC 27316 and the second

3

address is 2963 Burney Road, Asheboro, NC 27205. The significance of each address is further described within this affidavit.

8.     The USPIS routinely sees that DTOs will mail drugs through the USPS to non-source state locations. The drug proceeds are then mailed back to the source state, which is usually the same city or state that the identified drug packages were mailed from. From reviewing USPS business records, the USPIS identified packages suspected to contain drug proceeds mailed from the MDNC to multiple addresses in Phoenix, Arizona. The packages suspected to contain drug proceeds were found to be mailed both before and after suspected and confirmed drug packages were mailed to the MDNC.

9.     In or around February 2023, the USPIS began to conduct federal search warrants on packages mailed from the MDNC back to Arizona. To date, the USPIS has conducted eight warrants on these packages, all of which contained bulk U.S. currency. The combined total of all eight packages is $185,410.00. The search warrants obtained authorized the USPIS to remove the internal packaging materials, replace them with similar or replica materials, and return the packages to the mail stream, thus allowing the USPIS to identify DTO members and money couriers to further identify those involved in the ongoing conspiracy. This led to 23 latent fingerprints belonging to Nicholas Curry to be recovered from several of these packages confirmed to contain bulk U.S. currency.

10.     The investigative team has conducted numerous surveillance operations on packages mailed from Phoenix, Arizona, to addresses within the MDNC. On multiple occasions, Curry has been observed picking up the packages and transporting them to a secondary "stash" location within the MDNC. The USPIS obtained two separate pen register and trap and trace authorizations for Curry's known cellular devices. This data has shown that one of Curry's top

4

callers is (336) 963-5762. As noted below, this number has been confirmed to belong to Trent Starnes.

11. The USPIS identified suspected drug packages being mailed from Phoenix, Arizona to 4279 Rockie River Street, Ramseur, NC 27316. The USPIS has confirmed through law enforcement databases that Starnes has previously provided this address to law enforcement as his primary residence. A review of USPS business records found that six packages had been mailed to this address, which originated from the Phoenix area, between April 2022 and January 2023. A seventh package was found to have been mailed to this address, and during this same time period, that originated from Tucson, AZ.

12. The USPIS additionally identified similar packages being mailed to 2963 Burney Road, Asheboro, NC 27205. A review of USPS business records found that 12 packages had been mailed to this address, which originated from Phoenix, Arizona, between February 2023 and March 2023. In March 2023, the Randolph County Sheriff's Office received an anonymous complaint that packages containing drugs were being mailed to this address. Deputies immediately responded to the residence and contacted the homeowners, who denied possessing or receiving drugs through the mail. Since this occurred, no additional packages have been observed to be mailed to 2963 Burney Road originating from Arizona.

13. In June 2023, I met with Moore County Sheriff's Office (MCSO) Confidential Source 2100078 (CS1).[1] CS1 advised he/she has purchased approximately 30 pounds of

---

[1] CS1 is a convicted felon and has multiple pending felony charges. CS1 has provided information that has been independently verified by the USPIS through physical surveillance, electronic surveillance, pen registers, USPS business records, and multiple law enforcement databases. Most of the information provided by CS1 was known to the USPIS prior to CS1 agreeing to cooperate with law enforcement. CS1 has provided substantial information against self-interest in the hopes of receiving leniency in his/her criminal cases which has been verified by the USPIS and the Moore County Sheriff's Office.

methamphetamine from Starnes in an approximate two-year period. CS1 allowed me to review text message communication between he/she and Starnes phone number of (336) 963-5762. In the text thread, Starnes sent the address of 2963 Burney Road. CS1 confirmed he/she previously purchased methamphetamine from Starnes at 2963 Burney Road.

14.     CS1 confirmed Starnes routinely uses Facebook Messenger to communicate drug prices and arrange drug deals. CS1 identified Facebook profile "Itz Trenadad" as the Facebook account of Starnes. I conducted a review of the "Itz Trenadad" Facebook account, which is open to the public, and identified the person in the photos as Trent Starnes. This is based on my previous investigation into Starnes, to include the review of arrest photographs of Starnes. It should be noted, Starnes has a specific tattoo of a cross on his face that is very distinguishable, and the following photo is from this Facebook profile and consistent with arrest and booking photographs by law enforcement:



15.     CS1 further allowed me to review message communication sent from Starnes. The communication showed requests for "windows,' which I know through my training and experience to be slang terminology for methamphetamine, commonly referred to as "glass" and/or "ice." Starnes provided his phone number in the message thread as (336) 963-5762. CS1 asked what the current price was for one pound of methamphetamine, to which Starnes replied "1950." The price

6

of $1,950.00 is consistent and within the current price range of one pound of methamphetamine at the time of this affidavit.

16.     In other messages, CS1 stated he/she needed "8," which CS1 confirmed was eight pounds of methamphetamine. CS1 again messaged Starnes and inquired into if he had any "windows," to which Starnes replied, "white girls only." I know through my training and experience that this is common slang terminology for cocaine. CS1 confirmed Starnes was replying that he was only in possession of cocaine and did not currently possess any methamphetamine.

17.     In May 2023, Starnes sent Facebook messages to CS1 and asked if he/she could "get 10," for "18 a pop." CS1 confirmed Starnes was asking CS1 if he/she could purchase ten pounds of methamphetamine. Due to purchasing in bulk, Starnes was willing to lower the price to $1,800.00 per pound of methamphetamine. Starnes confirmed he did not currently possess the "10," but stated he had ordered ten. In my experience as a U.S. Postal Inspector, it is my belief that Starnes was waiting for the ten pounds of methamphetamine to arrive through the USPS at an undetermined address. CS1 attempted to negotiate for a smaller amount, to which Starnes said he was attempting to "move all ten" for "2k." Starnes complained about the price per pound, indicating he was not happy on the rate per pound and there would be little profit for him.

18.     I conducted a further review of Starnes Facebook account, "Itz Trenadad." From this review, I found Starnes' earliest post of suspected criminal activity involving drug trafficking and money laundering was on July 16, 2016. In this post, a photo was posted to the account which

7

depicted bulk U.S. currency. In 2017,[2] Starnes was sentenced to serve time in an Arizona state prison, which appears to be consistent with his ongoing use of "Itz Trenadad" Facebook profile to facilitate drug trafficking conversations and publicly display related images:

---

[2] In 2017, Starnes was arrested for ten felony drug offenses, five felony money laundering offenses, five offenses of managing and/or financing a crime syndicate, and one count of conspiracy. The offenses he was arrested for occurred within Arizona. In the same year, Starnes pleaded guilty to one drug offense and was sentenced to 2.5 years in the Arizona Department of Corrections. Starnes additionally has arrests and/or felony convictions in North Carolina for possession with the intent to distribute, attempted murder, fleeing and eluding, possession of a firearm by a felon, and multiple other criminal offenses.



19.     On June 5, 2023, a preservation request was submitted to Facebook for account: "Itz Trenadad."  This preservation request was assigned case number 7863431.

## BACKGROUND CONCERNING FACEBOOK[3]

20.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

22.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

---

[3] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

23.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

26.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content

11

unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

27. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

29. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

12

33.     Meta also retains records of which Internet Protocol ("IP") addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

34.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

35.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

13

For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

38.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

14

to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

<u>CONCLUSION</u>

39.     Based on the foregoing, I request that the Court issue the proposed search warrant.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41.     This Court has jurisdiction to issue the requested warrant because it is "a court of

15

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

/S/ Jordan Wicks
Jordan Wicks
U.S. Postal Inspector
U.S. Postal Inspection Service

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal
Rules of Criminal Procedure 4.1 and 41 this ___6ᵗʰ___ day of July, 2023.

JOI E. PEAKE
UNITED STATES MAGISTRATE JUDGE

16

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with Facebook account **"Itz Trenadad,"** account number: 100012897122617, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California. A preservation request was submitted to Meta Platforms, Inc. on June 5, 2023, and assigned case: 7863431.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information for User ID: **"Itz Trenadad"** including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities **from July 16, 2016 through July 5, 2023.**

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **from July 16, 2016 through July 5, 2023,** including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers;

future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user **from June 16, 2016 through July 5, 2023**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account **from July 16, 2016 through July 5, 2023**;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(p)　　All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

(q)　　All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, § 1956 (Laundering of Monetary Instruments); Title 18, United States Code, § 1957 (Engaging in Monetary Transactions in Property Derived from a Specified Unlawful Activity); and Title 21, United States Code, §§ 841(a)(1) and 846 (possession with the intent to distribute controlled substances, distribution of controlled substances, and conspiracy to do the same), involving Trent Starnes for each user ID identified on Attachment A, in the form of:

(a)   Records, information, photos, videos, electronic messages, direct messages, posts, stories, and other electronic communications that identify, discuss, or depict controlled substances, drug trafficking activities, the coordination of drug trafficking activities, money laundering activities, the coordination of money laundering activities, U.S. currency or other financial instruments, digital currency, firearms, jewelry, automobiles and vehicles, luxury goods, bank or other financial accounts, financial apps, linked accounts, and consumer purchases;

(b)   Records, information, photos, videos, electronic messages, direct messages, posts, stories, and other electronic communications that identify and/or establish social relationships of known conspirators and aiders and abettors, including Nicholas Curry, and any unknown or unidentified coconspirators and aiders and abettors, as well as the location of such persons;

(c)   Records, information, photos, videos, electronic messages, direct messages, posts, stories, IP addresses, and other electronic communications that reveal the accounts and devices being used by persons to communicate with the Facebook account

4

with User ID **"Itz Trenadad"** about controlled substances, drug trafficking activities, the coordination of drug trafficking activities, money laundering activities, the coordination of money laundering activities, U.S. currency or other financial instruments, digital currency, firearms, jewelry, automobiles and vehicles, luxury goods, bank or other financial accounts, and financial transactions;

(d)     Records, information, photos, videos, electronic messages, direct messages, posts, stories, and other electronic communications that demonstrate whether or not Trent Starnes has lawful employment and the frequency of such employment, or the lack thereof; and

(e)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

5